```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA          :     CRIMINAL ACTION
                                  :     NOS. 08-450-01, 02, & 04
     v.                           :
                                  :
CHRISTOPHER G. WRIGHT,            :
RAVINDER S. CHAWLA, and           :
ANDREW TEITELMAN                  :
```

M E M O R A N D U M[1]

EDUARDO C. ROBRENO, J.                        March 19, 2013

Before the Court are plea agreements between Defendants Christopher Wright, Ravinder Chawla, Andrew Teitelman, and the Government pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The Rule allows the Government and a defendant to enter into a plea agreement that provides for a specific sentence. The agreement is subject to the approval of a district judge. If the district judge rejects the plea agreement, the defendant is allowed to withdraw his or her plea and proceed to trial. For the reasons that follow, the Court will reject the guilty-plea agreements proposed by Defendants and the Government.

---

[1] This Memorandum is an edited version of the opinion delivered from the bench on March 15, 2013.

## I. BACKGROUND

Defendant Wright was chief of staff to former Philadelphia City Councilman At-Large John "Jack" Kelly.[2] Defendant Chawla was a principal contributor to the election campaign of Councilman Kelly. Defendant Teitelman was a lawyer representing Defendant Chawla's businesses who actively participated in Councilman Kelly's election campaign.

Defendants were charged in a 14-count indictment. Following a jury trial, the jury returned the following verdict.

All Defendants were convicted of Count One, which charged them with conspiracy to commit honest services fraud. Defendant Chawla alone was convicted of Count Three (honest services wire fraud), which charged all three with devising a scheme to exchange a thing of value for Defendant Wright's official action in connection with the River City development project. The scheme allegedly involves Defendants Chawla and Teitelman seeking Defendant Wright's assistance in thwarting the Philadelphia City Council's proposed building-height restriction. It also involved an email from Defendant Chawla to Defendants Wright and Teitelman offering to engage Defendant Wright as "our consultant" to handle liaison work regarding the

---

[2] Councilman Kelly was not charged with wrongdoing in the Indictment.

Philadelphia River City Project.

All Defendants were convicted of Count Ten (honest services mail fraud), which charged them with devising a scheme to exchange Defendant Teitelman's free legal services, combatting Defendant Wright's eviction, for his official acts. It involved a letter by mail from Defendant Teitelman's law-firm associate to a lawyer at PBRG, the real estate company pursuing the eviction, with the knowledge and approval of Defendants Teitelman and Chawla, which included an answer to the eviction complaint against Defendant Wright.

All Defendants were convicted of Count Twelve (traditional mail fraud), which charged them with devising a scheme to deprive PBRG of money and property by concealment. It involved Defendants Chawla and Teitelman as they arranged to provide Defendant Wright the free use of an apartment and an associated parking space. The mailing in question was the same letter mentioned in the description of the facts surrounding Count Ten.

All Defendants were acquitted of Count 2 (honest services wire fraud). Defendants Chawla and Teitelman were acquitted of Count 3, and all Defendants were acquitted of Counts 4 through 9 (honest services wire fraud) and Count 11 (honest services mail fraud). Defendant Chawla was acquitted of

Count 13 (bribery), and Defendant Wright was acquitted of Count 14 (also bribery).[3]

The Court then sentenced Defendant Wright to 48 months imprisonment, Defendant Chawla to 30 months imprisonment, and Defendant Teitelman to 24 months imprisonment. Defendants appealed. Subsequent to the Court's sentencing and when the case was on appeal, the U.S. Supreme Court decided Skilling v. United States, 130 S. Ct. 2896 (2010), wherein the Court held that the honest services fraud statute, 18 U.S.C. § 1346, only covered bribery and kickback schemes. 130 S.Ct. at 2927-35. It found that honest-services-fraud theories based on a public servant's failure to disclose a conflict of interest resulting in personal gain were impermissible, because they rendered the statute unconstitutionally vague. Id.

Applying Skilling to this case, the Third Circuit found that, although the evidence was sufficient to sustain all of Defendants' convictions, United States v. Wright, 665 F.3d 560, 570, 575 (3d Cir. 2012), Skilling made the Court's honest services fraud instruction, which instructed the jury that liability may lie under a "conflict-of-interest" theory or "bribery" theory, incorrect, Id. at 570-72. Furthermore, because

---

[3] Defendant Hardeep Chawla, Defendant Chawla's brother, was acquitted on all counts.

evidence of honest services fraud overlapped with the evidence submitted on the traditional fraud counts, "prejudicial spillover" tainted the traditional fraud convictions. Id. at 577. Therefore, the Third Circuit vacated all four counts and remanded for a new trial. Id. at 577-78. Defendants moved for a rehearing en banc, which the Third Circuit denied. On March 20, 2012, the Third Circuit issued its mandate ordering a new trial on all convicted counts.

In preparation for retrial, which has been scheduled for March 18, 2013, and with the view of narrowing the proofs the Government may offer at the retrial, Defendants filed a Motion to Limit the Scope of Retrial (ECF No. 360). The Government responded (ECF No. 361), and, shortly thereafter, Defendants filed a reply memorandum. In the Court's Order of February 4, 2013, the Court granted in part and denied in part Defendants' Motion, rejecting their constructive-amendment argument and their double jeopardy/issue preclusion arguments as they related to all but one of the issues surrounding the substantive honest services counts. See ECF No. 385. The only issue the Court precluded from trial was Hardeep Chawla's $1000 check given to Defendant Wright at a Christmas party. Defendants moved to extend the time to file an interlocutory appeal on the issue-preclusion matters, and the Court granted the motion,

extending the time to March 18, 2013, the day of trial. See Order, Feb. 14, 2013, ECF No. 387.

Defendants have since entered into "C" plea agreements with the Government, which were presented to the Court on March 12, 2013, two hours prior to the final pretrial conference and without any explanatory memorandum.[4] The Court held a hearing to consider the plea agreements on Friday, March 15, 2013. The Court must now decide whether to accept or to reject these pleas.

**II. Defendants' "C" Plea Agreements**

   A. Applicable Law

The plea agreements are made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which provides:

> An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related

---

[4] The Court notes that the Government did not comply with the Court's November 6, 2012, Scheduling Order requiring the filing of pre-trial materials by March 8, 2013. See ECF No. 373. At the final pretrial conference, the Court admonished the Government for failing to comply with the Scheduling Order and required the Government to submit a memorandum setting forth justifications for the "C" plea agreements, which the Government has since filed and which Defendants have joined. See Gov't's Mem. in Support of Rule 11(c)(1)(C) Guilty Plea Agreements; Def. Chawla's Mem., ECF No. 395.

offense, the plea agreement may specify that an attorney for the government will . . .

(C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c)(1)(C).

Although the Rule permits the parties to agree on a specific sentence, that agreement does not discharge the district court's independent obligation to exercise its discretion in determining whether to accept it. Freeman v. United States, 131 S. Ct. 2685, 2692 (2011). "Any bargain between the parties is contingent until the court accepts the agreement." Id. In considering "C" plea agreements, courts follow the framework provided by the United States Sentencing Guidelines, which are now advisory. See United States v. Booker, 543 U.S. 220, 246-47 (2005). An agreement should be accepted "only if the court is satisfied either that such sentence is an appropriate sentence within the applicable guideline range or, if not, that the sentence departs from the applicable guideline range for justifiable reasons." U.S. Sentencing Guidelines Manual § 6B1.2 cmt (2012). In other words, the Guidelines recommend that a district court first give due consideration to the relevant sentencing range, even if the parties require a

specific sentence as a condition of the guilty plea. If the sentence is outside the recommended range, a court should identify specific reasons for accepting or rejecting the agreement.

If a court rejects the plea agreement, it must, on the record, comply with Rule 11(c)(5) of the Federal Rules of Criminal Procedure. That rule requires the court to "(1) advise the parties that it is rejecting the plea agreement, (2) afford the defendant an opportunity to withdraw his guilty plea, and (3) advise the defendant that, if his plea is not withdrawn, he may be sentenced more severely than contemplated by the plea agreement." United States v. Lewis, 633 F.3d 262, 270 (4th Cir. 2011) (citing Fed. R. Crim. P. 11(c)(5)); see also In re Vasquez-Ramirez, 443 F.3d 692, 696 (9th Cir. 2006) (holding that, after a court rejects a "C" plea agreement, "Rule 11(c)(5) dictates the procedures to be followed").

But "nowhere does Rule 11 define the criteria by which a district court should exercise the discretion the rule confers, or explain how a district court should determine whether to accept a plea agreement." In re Morgan, 506 F.3d 705, 709-10 (9th Cir. 2007). Neither does the Court have a policy as to what criteria to apply in determining the reasonableness of plea agreements or whether to universally accept or reject such

-8-

pleas. In the past, after due consideration, it has accepted some "C" plea agreements while rejecting others, depending upon the particular facts and circumstances of each case. See, e.g., United States v. Ruch, 906 F. Supp. 261 (E.D. Pa. 1995) (Robreno, J.). The Guidelines only mention that, before accepting the plea, a court must find that there are justifiable reasons for any departure from the applicable guideline range.

However, courts in this Circuit and elsewhere have provided additional guidance. Specifically, they have held that a district court must ordinarily set forth its reasons for accepting or rejecting the plea agreement on the record and that those reasons must be individualized and based on the specific facts and circumstances of each case. See, e.g., In re Morgan, 506 F.3d at 712; United States v. Foy, 28 F.3d 464, 472 (5th Cir. 1995); Ruch, 906 F. Supp. at 264. And courts have tended to rely on the adequacy of the sentence's length, the factors under 18 U.S.C. § 3553(a), and the public interest as factors in determining the plea agreement's reasonableness. See In re Morgan, 506 F.3d at 712; United States v. Hicks, No. 06-0055, 2006 WL 3544713, at *1-2 (M.D. Pa. Dec. 8, 2006); United States v. Lange, No. 98-472, 1999 WL 219787, at *2 (E.D. Pa. Apr. 12, 1999); Ruch, 906 F. Supp. at 264-65. The Court will follow this pattern.

B. "C" Plea Agreement Details

The details of the "C" plea agreements are as follows. Defendants agree to waive prosecution by indictment and permit the Government to substitute superseding informations. Guilty Plea Agreement ¶ 1.[5] Defendant Wright agrees to plead guilty to one count of accessory after the fact to HUD fraud in violation of 18 U.S.C. § 3, a class B misdemeanor. Wright Guilty Plea Agreement ¶ 1. Defendants Chawla and Teitelman agree to plead to one count each of conspiracy to commit HUD Fraud in violation of 18 U.S.C. § 371, a class A misdemeanor. Chawla & Teitelman Guilty Plea Agreement ¶ 1. The parties agree that the appropriate disposition of the case is: time served; up to one year of supervised release; a fine to be determined by the Court; and a $10 special assessment for Defendant Wright and $25 special assessments for Defendants Chawla and Teitelman. Id. ¶ 4.

At the time of sentencing, the Government will move to dismiss the Indictment as to all Defendants. If the Court denies the government leave to do so, then the parties will have the right to withdraw from the plea agreement and proceed to trial on the original felony counts (except the counts of which

---

[5] The guilty-plea agreements contain identical language except for the description of Defendant Wright's count of and sentence for accessory after the fact to HUD fraud.

Defendants were acquitted). Id. ¶ 5.a. Importantly, the agreement is contingent on all Defendants entering into guilty pleas in this case and the Court's acceptance of the guilty pleas. Id. ¶ 6. If either of these conditions is not satisfied, the Government will be free to withdraw and proceed to trial. Id.

Also, per the "C" Plea Agreement, the parties agree that, for the entire period of supervised release, neither Defendants nor any businesses or entities over which they have any control or ownership will: (a) apply or attempt to work for the City of Philadelphia; (b) seek employment with the City of Philadelphia; and (c) enter into, seek to enter into by way of a bid or proposal process, or participate as a joint venture on any contract awarded by the City and/or funded, in whole or in part, by City funds, including, but not limited to, non-competitively bid contracts, contracts awarded by the Procurement Department pursuant to a bid solicitation or request for proposals, public works contracts, and contracts for services, supplies, and equipment. Id. ¶ 4.a. The parties jointly recommend that the agreement be imposed as the sole condition of the Defendants' supervised release. However, the Court has discretion to determine these conditions. Gov't's Mem. in Support of 11(c)(1)(C) Guilty Plea Agreements 12.

In essence, the salient aspects of the agreements are that Defendants will be able to plead to one misdemeanor each and receive a time-served sentence.

C. <u>Discussion</u>

After careful review of the "C" plea agreements, the Presentence Investigation Reports regarding Defendants' original sentencings, the transcripts of those sentencings, and the Government's Memorandum in support of the agreements, and after a hearing where all parties stated their positions, including United States Attorney Zane David Memeger, who appeared for the Government at the Court's request, the Court determines that the agreements are unreasonable. The sentences fall well below the recommended ranges for the crimes charged in the indictment, they are too lenient in light of the seriousness of the charged crimes, they fail to comply with the purposes of 18 U.S.C. § 3553(a)(2), and they are contrary to the public interest.

The Court first turns to the Sentencing Guidelines. The plea agreements require sentences of time served for each defendant. Defendant Wright has served 11 months in prison, Defendant Chawla has served 10 months, and Defendant Teitelman has served 9 months. These sentences are significantly below the Guidelines' recommended ranges (which are, of course, advisory and not binding upon the Court), as they relate to the crimes

charged in the Indictment. The recommended ranges for imprisonment for Defendants Wright, Chawla, and Teitelman, respectively, are 51 to 68 months, 51 to 63 months, and 51 to 63 months. In fact, the proposed sentences are also far less than the actual sentences that the Court imposed after the first trial in this matter—48, 30, and 24 months, respectively—and after the Court granted each Defendant significant variances. Notably, the Government previously recommended sentences at the top of the Guidelines range. Wright Sentencing Trans. 87:2-4.

The Government, without citing any supporting case law, now argues that the new misdemeanor charges in the yet-to-be-filed Information should be the comparator, and that the time served by Defendants matches or exceeds the Guidelines' recommended sentences for the misdemeanors. The Court rejects this argument. When properly comparing them to the Indictment, the recommended sentences are substantially below the Guidelines' recommended ranges for imprisonment.

Second, the sentences are not consistent with the sentencing scheme set by Congress in 18 U.S.C. § 3553(a)(2); specifically, the seriousness and deterrence factors are not promoted by the proposed sentences. The serious nature of the offenses as to Defendant Wright is evident from the Indictment itself:

> The City of Philadelphia and its citizens have a right to the honest services of their public officials in the operation of City government . . . .
>
> Defendant WRIGHT was a public official of the City of Philadelphia. As such, defendant WRIGHT owed the City and its citizens, under the City Charter, the Philadelphia Code, and Pennsylvania common law, a duty to: (a) refrain from the use of public office for private gain; . . . (d) refrain from soliciting or accepting any item of monetary value, including bribes, gifts, loans, and other benefits, with the intent to be influenced, from any person seeking official action from, doing business with, or whose interest may be affected by the performance or nonperformance of his duties; [and] (e) act impartially and not give preferential treatment to any private individual seeking to conduct or conducting business with the City . . . .

Indictment 1-2, ECF No. 1. The Indictment further explained the seriousness of the crimes charged when it accused Defendants of "devis[ing] a scheme to defraud the City of Philadelphia and its citizens of the right to defendant Christopher Wright's honest services in the affairs of the City of Philadelphia, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises." Id. at 25.

Defendants were tried and convicted of several of the charges brought in the Indictment. As mentioned above, Defendant Chawla was convicted of four counts, while Defendants Wright and Teitelman were convicted of three each. See supra pp. 2-3. The charges included conspiracy to commit honest services fraud, substantive honest services mail and wire fraud, bribery, and

traditional mail fraud. See supra pp. 2-3.⁶

The Government argues that Skilling's change in the law of honest services fraud makes the case at bar much more difficult to prosecute, because, by ruling that the conflict-of-interest theory of honest services fraud is unconstitutional, the Supreme Court essentially eliminated half of the law's bite. See Gov't's Mem. in Support of 11(c)(1)(C) Plea Agreements 11. The Government further expresses concern that the jury may have relied on the now-unconstitutional theory in convicting Defendants of the substantive honest-services counts. See id. But the Third Circuit sufficiently addressed these concerns when, on appeal of Defendants' initial sentences, it said:

> [D]rawing all possible inferences in the Government's favor, a reasonable jury could have found that Chawla and Teitelman conferred benefits on Wright intending to secure his favors, and that Wright accepted those benefits intending to aid Chawla and Teitelman. The evidence was therefore sufficient to convict [Defendants] of honest services fraud, and conspiracy to commit that fraud, under the bribery theory alone.

Wright, 665 F.3d at 570.

The Government's current position represents a 180-degree turn from its prior actions and statements. For example, at Defendant Wright's sentencing hearing, it said, "[D]efendant

---

⁶ Also as discussed above, Defendants were acquitted of several counts of honest services wire fraud, as well as honest services mail fraud and bribery. See supra pp. 3-4.

"through his corrupt actions, has done extreme harm to the City of Philadelphia and to the public who pay attention to what goes on in city government." Wright Sentencing Trans. 87:18-21, Aug. 10, 2009. At Defendant Chawla's sentencing hearing, it said, "[Defendant] Chawla is not a minimal or minor participant in this matter. Everything that was done in this case was done for the benefit of [his] companies . . . [Defendant] Wright was bribed, so Wright would perform actions and duties to benefit [Defendant] Chawla and his companies." Chawla Sentencing Trans. 30:16-23, Sept. 9, 2009. At Defendant Teitelman's sentencing hearing, it noted his additional duties as an officer of the Court when it said:

> [B]ecause of the defendant's status as a lawyer, because he lied under oath . . . tried to pass a message to [a government official during court proceedings], filed false answers to a civil complaint for the eviction matter and he has shown absolutely no remorse, whatsoever . . . all of those facts . . . demand a guideline sentence in this case.

Teitelman Sentencing Trans 75:18-76:7, Sept, 29, 2009.

Consistent with the above-mentioned comments, the Government vigorously contested the matter even after the Third Circuit reversed and remanded it for a new trial. Specifically, the Government actively opposed Defendants' Motion to Limit the Scope of Retrial, both on the papers and at oral argument. It no doubt spent countless hours researching complicated

-16-

constitutional principles, including double-jeopardy issues not fully settled in the Third Circuit. Its argument, for the most part, convinced the Court to preserve the original scope of trial. See Order, Feb. 4, 2013. These tireless efforts by the Government prior to presenting the plea agreements to the Court emphasize the large disparity between the gravity of the charged crimes and the recommended sentences.

Third, the recommended sentences in the plea agreements also lack the element of deterrence called for by 18 U.S.C. § 3553(a)(2)(B). These lenient recommended sentences are a signal to others that the vice of public corruption can be taken lightly. At each of Defendants sentencing hearings, the Court noted that any failure to deter future violators of this type of crime would increase the incentive for "well-connected or wealthy individuals" to "influence the direction of government policy by corrupting local officials." E.g., Wright Sentencing Trans. 85:17-20. In short, "the deterrence effect in this case" is "central to the sentencing concerns of the Court." Id. at 85:20-21. To that end, the original sentences were shaped to promote general deterrence. The recommended sentences here, constituting less than 1/5 the original amount of time in prison, are not.

Fourth, the recommended sentences do not serve the

public interest. As the Court noted during the sentencing hearings, "The public trust is the most sacred possession of a democratic society. And public officials are their guardians[,] and [when] that trust is violated, it breeds cynicism, apathy, and distrust among the public." Teitelman Sentencing Trans. 84:25-85:3. After four years of litigation, a jury trial, a jury verdict, a Third Circuit appeal, hundreds of hours of work, and strong rhetoric from both sides of the courtroom, the plea agreements do not reflect reality. The charges to which Defendants have agreed to plead guilty bear little resemblance to the felony charges that the Government had previously asserted. This is not a case now, nor has it ever been, about an after-the-fact HUD fraud or conspiracy to commit such—both misdemeanors—as described in the plea agreements. Defendants are innocent until proved guilty and have a right to put the Government to its proofs. Conversely, the public has a right to expect transparency in the charges to which Defendants agree to plead guilty.

Finally, nothing in the Court's ruling today prevents the imposition of a lesser sentence than Defendants originally received should they be convicted at trial. And should a conviction follow the trial, at a sentencing hearing, the Defendants would, of course, be able to articulate why a lesser

sentence is warranted by pointing to the factors under 18 U.S.C. § 3553(a)(2) and to any other cognizable reason.

And the Government remains free to dismiss the charges should it determine, in the exercise of its prosecutorial discretion, that this prosecution is not warranted or that its resources would be better assigned to other areas. If it were to do so, however, it must openly and transparently tell the people of Philadelphia why what it has for so long trumpeted as a significant case involving public corruption does not warrant further prosecution. Under these circumstances, the Court will not hand the Government a fig leaf behind which the true outcome of this prosecution can be obscured from the public.

D. Conclusion

For the foregoing reasons, the Court will reject Defendants' "C" plea agreements as unreasonable and not justified in light of the factual circumstances of the case.[7] An appropriate order will follow.

---

[7] The Government may now choose to proceed with the prosecution or discontinue the case. The Defendants may withdraw from the plea agreements and proceed to trial or plead guilty openly or under an 11(c)(1)(B) agreement to the Indictment. If the latter is chosen, the Court will hold a hearing to determine compliance with the provisions of Rule 11 of the Federal Rules of Criminal Procedure.