IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA       :   CRIMINAL ACTION
                                 :   NOS. 08-450-01, 02, & 04
     v.                         :
                                 :
CHRISTOPHER G. WRIGHT,        :
RAVINDER S. CHAWLA, and       :
ANDREW TEITELMAN           :


M E M O R A N D U M[1]


EDUARDO C. ROBRENO, J.                 April 5, 2013


TABLE OF CONTENTS

I.   BACKGROUND................................................ 2

II.  DEFENDANTS' JOINT MOTION TO LIMIT THE SCOPE OF RETRIAL.... 6

  A.  Constructive Amendment ................................. 7

    1.  Legal Standard ...................................... 7

    2.  Bribery Theory of Honest-Services Fraud ............. 9

    3.  Potential Real Estate Commissions as Things of Value .. 15

  B.  Double Jeopardy and Collateral Estoppel ............... 18

    1.  Legal Standard ..................................... 21

    2.  Rearguing Defendants' Criminal Intent .............. 22

    3.  Rearguing the Issues as Overt Acts of Conspiracy ...... 31

    4.  Hardeep Chawla's $1000 Check ....................... 35

III. CONCLUSION............................................... 36

---

[1]      On February 4, 2013, the Court issued an order granting in part and denying in part the instant motion. See Order, Feb. 4, 2013, ECF No. 385. Defendants have appealed the Court's order. The Court now submits this Memorandum Opinion that sets forth the basis for its ruling. The Court does so pursuant to Rule 3.1 of the Third Circuit Local Appellate Rules, which allows a district court judge to file a written opinion addressing matters on appeal within thirty days of the docketing of the notice of appeal. 3d Cir. L.A.R. 3.1 (2011).

## I.    BACKGROUND

Christopher Wright ("Defendant Wright") was chief of staff to former Philadelphia City Councilman At-Large John "Jack" Kelly.[2] Ravinder Chawla ("Defendant Chawla") was a principal contributor to the election campaign of Councilman Kelly. Andrew Teitelman ("Defendant Teitelman") was a lawyer representing Defendant Chawla's businesses who actively participated in Councilman Kelly's election campaign (Defendant Wright, Defendant Chawla, and Defendant Teitelman, collectively, "Defendants").

Defendants were charged in a fourteen-count Indictment. Following a jury trial, the jury returned the following verdict. All Defendants were convicted of Count One, which charged them with conspiracy to commit honest-services fraud. Although all three were charged in Count Three, honest-services wire fraud, which charged them with devising a scheme to exchange a thing of value for Defendant Wright's official action in connection with the Philadelphia River City Development Project ("River City Project"), Defendant Chawla alone was convicted. The scheme allegedly involved Defendants Chawla and Teitelman seeking Defendant Wright's assistance in

---

[2]    Councilman Kelly was not charged with wrongdoing in the Indictment.

thwarting the Philadelphia City Council's proposed building-height-restriction ordinance. The scheme also included an email from Defendant Chawla to Defendants Wright and Teitelman offering to engage Defendant Wright as "our consultant" to handle liaison work regarding the River City Project.

All Defendants were convicted of Count Ten, honest-services mail fraud, which charged them with devising a scheme to exchange Defendant Teitelman's free legal services regarding Defendant Wright's eviction for his official acts. The scheme involved a letter, which included an answer to Defendant Wright's eviction complaint that Defendant Teitelman's law-firm associate mailed to a lawyer at Premier Realty Group ("PBRG"), the real estate company pursuing Defendant Wright's eviction. Defendants Teitelman and Chawla allegedly knew about and approved of the scheme.

All Defendants were convicted of Count Twelve, traditional mail fraud, which charged them with devising a scheme to deprive PBRG of money and property by concealment. The scheme involved Defendants Chawla and Teitelman arranging to provide Defendant Wright the free use of an apartment and associated parking space. The mailing alleged in this count was the same discussed above regarding Count Ten.

Defendants Chawla and Teitelman were acquitted of

Count Three; and all Defendants were acquitted of Counts Two and Four through Nine, honest-services wire fraud; as well as Count Eleven, honest-services mail fraud. Defendant Chawla was acquitted of Count Thirteen, bribery, and Defendant Wright was acquitted of Count Fourteen, also bribery.[3]

The Court then sentenced Defendants to terms of imprisonment as follows: Defendant Wright received forty-eight months, Defendant Chawla received thirty months, and Defendant Teitelman received twenty-four months. Defendants appealed. After sentencing and while Defendants' appeal was pending, the Supreme Court decided Skilling v. United States, 130 S. Ct. 2896 (2010), wherein the Court significantly reduced the scope of the honest-services-fraud statute codified at 18 U.S.C. § 1346. Specifically, the Skilling Court held that the statute only covered bribery and kickback schemes. Id. at 2927-35. The Court found that honest-services-fraud theories based on a public servant's failure to disclose a conflict of interest resulting in personal gain were impermissible, because they rendered the statute unconstitutionally vague. Id.

Applying Skilling to this case, the Third Circuit first found that the evidence was sufficient to sustain all of

---

[3]    Defendant Hardeep Chawla, Defendant Chawla's brother, was acquitted on all counts.

-4-

Defendants' convictions. United States v. Wright, 665 F.3d 560, 570, 575 (3d Cir. 2012). However, the Third Circuit interpreted Skilling to render the Court's honest-services-fraud jury instruction, which instructed the jury that liability may lie under either a "conflict-of-interest" theory or "bribery" theory, incorrect. Id. at 570-72. Furthermore, because the evidence of honest-services fraud overlapped with the evidence submitted on the traditional fraud counts, the Third Circuit found that "prejudicial spillover" tainted the traditional fraud convictions. Id. at 577. Therefore, the Third Circuit vacated the four counts of conviction and remanded the case for a new trial. Id. at 577-78. Defendants petitioned for panel rehearing, which the Third Circuit denied. See United States v. Wright, No. 09-3467 (3d Cir. Mar. 2, 2012) (order denying petition for panel rehearing).

In preparation for retrial and with the view of narrowing the proofs that the Government may offer at that time, Defendants filed the instant Motion to Limit the Scope of Retrial (ECF No. 360). The Government responded (ECF No. 361), and, shortly thereafter, Defendants filed a reply memorandum (ECF No. 363). On January 18, 2013, the Court held a hearing to consider the parties' arguments. The matter is now ripe for disposition.

## II. DEFENDANTS' JOINT MOTION TO LIMIT THE SCOPE OF RETRIAL

Defendants raise three arguments in their joint motion. First, Defendants contend that the Government cannot retry them on a bribery theory of honest-services fraud because doing so would constructively amend the Indictment.[4] Second, Defendants contend that the Government should be precluded from arguing that any potential real estate commissions were "things of value" offered to Defendant Wright by his co-defendants, because such an argument would also constructively amend the Indictment. And third, Defendants contend that the Double Jeopardy Clause, specifically collateral estoppel, prohibits the Government from relitigating nine issues that the jury necessarily decided in the first trial.

For the reasons stated below, the Court will reject the constructive amendment claims, prohibit relitigation of the $1000 check as an overt act, and permit relitigation of the remaining issues.

---

[4] Precluding the Government from arguing a bribery theory of honest-services fraud would necessitate dismissing Counts One, Three, and Ten—the three remaining substantive honest-services-fraud counts. In their reply brief, Defendants admit that this is their ultimate intention.

A.    Constructive Amendment

    1.    Legal Standard

A defendant may not be convicted of an offense
different from that charged in the indictment. "An indictment is
constructively amended when evidence, arguments, or the district
court's jury instructions effectively 'amend the indictment by
broadening the possible bases for conviction from that which
appeared in the indictment.'" United States v. McKee, 506 F.3d
225, 229 (3d Cir. 2007) (quoting United States v. Lee, 359 F.3d
194, 208 (3d Cir. 2004)); see also United States v. Daraio, 445
F.3d 253, 259 (3d Cir. 2006) (holding that a constructive
amendment occurs when the charging terms of an indictment are
altered during trial without a formal amendment). A constructive
amendment violates the Fifth Amendment's guarantee of indictment
by grand jury. McKee, 506 F.3d at 229. The key analysis is
"whether the defendant was convicted of the same conduct that
was charged in the indictment"; if he "is convicted of the same
offense that was charged in the indictment, there is no
constructive amendment." United States v. Vosburgh, 602 F.3d
512, 532 (3d Cir. 2010).

A variance, by comparison, occurs when "the charging
terms [of the indictment] are unchanged, but the evidence at
trial proves facts materially different from those alleged in

the indictment." United States v. Castro, 776 F.2d 1118, 1121

(3d Cir. 1985) (quoting United States v. Somers, 496 F.2d 723,

743 (3d Cir. 1974)). Although the presumption of prejudice

applies when assessing a constructive amendment, the harmless-

error standard applies to variances in an indictment. McKee,

506 F.3d at 231 n.7 (quoting United States v. Syme, 276 F.3d

131, 154 (3d Cir. 2002)). The defendant has the burden of

proving that the variance "surprised or otherwise . . .

prejudiced the defense." Daraio, 445 F.3d at 262.

Under Rule 7(c)(1) of the Federal Rules of Criminal

Procedure, an "indictment . . . must be a plain, concise, and

definite written statement of the essential facts constituting

the offense charged . . . [and cite to] the statute . . . that

the defendant is alleged to have violated." Fed. R. Crim. P.

7(c)(1). There are two constitutional requirements for an

indictment: "'first, [that it] contains the elements of the

offense charged and fairly informs a defendant of the charge

against which he must defend, and, second, [that it] enables him

to plead an acquittal or conviction in bar of future

prosecutions for the same offense.'" United States v. Resendiz-

Ponce, 549 U.S. 102, 108 (2007) (quoting Hamling v. United

States, 418 U.S. 87, 117 (1974)). An indictment complies with

Rule 7(c)(1), provided that it sets forth sufficient factual

-8-

detail to allow a defendant to prepare his defense even in the
absence of explicitly alleging all of the elements of the
offense. <u>United States v. Hodge</u>, 211 F.3d 74, 76-77 (3d Cir.
2000); <u>Gov't of the V.I. v. Moolenar</u>, 133 F.3d 246, 249 (3d Cir.
1998).

### 2.    Bribery Theory of Honest-Services Fraud

Defendants argue that the language of the Indictment,
as it relates to honest-services fraud, does not charge a bribery
theory of honest-services fraud. Specifically, Defendants note
that Count One, the conspiracy count, fails to mention bribery at
all and instead alleges that Defendants Chawla and Teitelman
provided benefits to Defendant Wright "in order to gain his
assistance on their development projects and other issues."
Indictment ¶ 15, ECF No. 1. Defendants argue that "in order to"
is not the proper charging language for bribery, claiming that
such language only alleges motive or purpose and not intent on
the part of Defendants Chawla and Teitelman. Defendants compare
this language to the Indictment's description of the $1000 check
that Hardeep Chawla allegedly gave to Defendant Wright as a
"bribe," claiming that the different language signals the
Government's intent not to include a bribery theory of honest-
services fraud in the Indictment.

In support, Defendants cite <u>United States v. Bryant</u>, 655 F.3d 232 (3d Cir. 2011), and <u>United States v. Kemp</u>, 500 F.3d 257, 281 (3d Cir. 2007), as examples of the Third Circuit's construction of indictment language "in exchange for" or "intending to influence" as adequate descriptions of the payor's intent in a bribery relationship. Thus, Defendants argue that an indictment must include the term "exchange," and that "in order to" is insufficient. Furthermore, Defendants argue that the Indictment says nothing about Defendant Wright's motive, purpose, or intent as the recipient of benefits.[5]

The Government responds that the term "in order to" is functionally the same as Defendant's preferred language—"in exchange for" or "intending to influence." The Government also cites the Indictment's language that Wright "undertook official acts to benefit defendants" as sufficiently alleging his improper intent. Indictment ¶ 17. The Government concludes that arguing a

---

[5]     Defendants claim that their constructive amendment argument, as it relates to the bribery theory of honest-services fraud, is new and was not raised within the context of the first trial. But Defendants are mistaken. They previously argued, in their pretrial motion relating to the first trial, that the Indictment fails to sufficiently allege a bribery theory of honest-services fraud. <u>See</u> Defs.' Mot. to Dismiss Counts 1-11, at 9-11, ECF No. 37. For similar reasons to those provided here, the Court rejected that argument and denied Defendants' corresponding Motion to Dismiss in an order dated December 30, 2008. <u>See</u> Order, Dec. 30, 2008, ECF No. 65.

bribery theory of honest-services fraud would not constitute a
constructive amendment to the Indictment.

Bribery involves a "quid pro quo—a specific intent to
give or receive something of value in exchange for an official
act." United States v. Sun-Diamond Growers of Cal., 526 U.S. 398,
404-05 (1999). However, "[t]he quid pro quo can be implicit, that
is, a conviction can occur if the Government shows that [the
defendant] accepted payments or other consideration with the
implied understanding that he would perform or not perform an act
in his official capacity . . . ." United States v. Antico, 275
F.3d 245, 257 (3d Cir. 2001), abrogated on other grounds by
Skilling, 130 S. Ct. at 2928. "The official and the payor need
not state the quid pro quo in express terms, for otherwise the
law's effect could be frustrated by knowing winks and nods."
Evans v. United States, 504 U.S. 255, 274 (1992). Furthermore,
under the "stream of benefits" theory of bribery, "it need not be
shown that any specific benefit was given in exchange for a
specific official act." Kemp, 500 F.3d at 281.

Here, the Indictment satisfactorily alleges a bribery
theory of honest-services fraud. Contrary to Defendants'
argument, in approving an indictment's language of an "exchange"
as adequately describing a payor's specific intent in Kemp and
Bryan, the Third Circuit did not require that talismanic language

be used in an indictment. Instead, the court looked at the indictment as a whole to determine whether "the factual allegations . . . were sufficient to alert [the defendants] that the government planned to pursue" the bribery theory of honest-services fraud. Kemp, 500 F.3d at 280.

The Court finds Judge DuBois's analysis in United States. v. Lynch, 807 F. Supp. 2d 224 (E.D. Pa. 2011), instructive. In Lynch, Judge Dubois reasoned that the charging instrument—an information[6]— did not adequately put the defendants on notice of a bribery theory of honest-services fraud for several reasons. First, the information's final clause—"all of which [the defendant] failed to disclose"—demonstrated that the Government only intended to charge a failure-to-disclose theory of honest-services fraud. Id. at 232-33. Judge Dubois arrived at this conclusion despite the information including the term "bribes," because that term was also included in the final clause. Second, he noted that the information contained only "influence language," as opposed to the "exchange language" upheld in Kemp. Id. at 232-33. As examples of "influence language" in the information, Judge Dubois pointed to the words "influenced" and "rewarded," the use of passive voice, and the

_____

[6]        The Kemp standard is the same for an indictment as it is for an information. See Lynch, 807 F. 2d at 231.

information's failure to "allege any intent on part of either defendant with respect to specific actions at the time of the improper payment." Id. Third, the only evidence of intent supported a failure-to-disclose theory of honest-services fraud. Id. at 233. Finally, Judge Dubois looked outside the information to the Government's statements during the defendants' change-of-plea hearing, where the Government represented that it did not intend to charge them on a bribery theory of honest-services fraud. Id.

The Court finds no reason to depart from this analysis. But, unlike in Lynch, the Indictment here meets the Kemp standard. Specifically, the Indictment's text sets forth sufficient factual detail of a bribery theory of honest-services fraud. As to the payor's specific intent, the Indictment states: "Defendants RAVINDER S. CHAWLA . . . and ANDREW TEITELMAN provided or caused to be provided a series of benefits to defendant CHRISTOPHER G. WRIGHT in order to gain his assistance on their development projects and other issues." Indictment ¶ 15. As to the payee's specific intent, the Indictment states: "Defendant CHRISTOPHER G. WRIGHT undertook official acts to benefit defendants RANINDER S. CHAWLA, . . . ANDREW TEITELMAN, and the Chawla business." Id. ¶ 17. The language here—"provided," "series of benefits," "to gain," and "to benefit," as well as the

use of active voice–is more akin to "exchange language" than mere "influence language."

Also, and unlike in Lynch, the Indictment here lists the failure-to-disclose theory of honest-services fraud in its own isolated paragraph. Id. ¶ 18. Thus, the theory is easily construed to be separate from the prior paragraphs of the "Manner and Means" section, which elaborate upon the bribery theory of honest-services fraud. For example, paragraph thirteen of the Indictment charges Defendants with "want[ing] to secure favorable treatment from City officials on development projects and other issues." Id. ¶ 13. This language signifies Defendants' intent regarding specific actions. Finally, the language here neatly tracks the "stream of benefits" bribery theory espoused in Kemp.

Other facts in the Indictment also put Defendants on notice that the Government intended to pursue a bribery theory of honest-services fraud. Defendant Wright was allegedly given a free apartment, a free parking space, and free legal services. Furthermore, these items were allegedly given in exchange for specific official acts that Wright had committed and for his continued cooperation in furthering the interests of his co-defendants. In particular, Defendant Wright allegedly engaged in the following official acts: (1) he assisted in reducing Defendants's business property (Sant Properties) taxes by

-14-

$13,000; (2) he assisted Hardeep Chawla in obtaining a letter of reference from Councilman Kelly; (3) he advocated for legislation favoring his co-defendants' interests; and (4) he assisted Defendants Chawla and Teitelman in their dealings with other Philadelphia agencies. These actions likewise satisfy the stream-of-benefits theory of bribery.

Therefore, the Court finds, as it did when ruling on the prior pretrial motion, that the Indictment satisfies Rule 7(c)(1) of the Federal Rules of Criminal Procedure and the constitutional requirements enunciated by the Supreme Court in Hamling, 418 U.S. at 117. The Indictment includes the essential facts necessary to support the charges upon which Defendants were convicted, fairly informs Defendants of the charges against them, and enables Defendants to defend themselves from future prosecutions on double jeopardy grounds.

3.    Potential Real Estate Commissions as Things of Value

Defendants attempt to relitigate a second argument that they made during the first trial and in post-trial motions; namely, they again argue that the Indictment does not sufficiently allege potential real-estate commissions as benefits, among others, offered to Defendant Wright, and thus the Government cannot argue the issue at trial. Alternatively,

-15-

Defendants argue, the issue at least constitutes a variance from the Indictment that would prejudice them if the Government were permitted to argue it. As before, the Court finds this argument unavailing.

The Indictment references Defendants' real-estate endeavors as overt acts made in furtherance of the conspiracy to commit honest-services fraud: "On various occasions between July 2006 and October 2006, defendant CHRISTOPHER G. WRIGHT . . . tried to secure potential buyers for the Philadelphia River City Project and other real estate developmental projects owned or controlled by defendant RAVINDER S. CHAWLA and World Acquisition Partners[, Defendant Chawla's real-estate company]." Indictment ¶ 46. The Government argues that the evidence of potential real estate commissions falls within the scope of the conspiracy charged. The Government further argues that, even if the Indictment does not specifically mention them, proving that Defendants Chawla and Teitelman offered such commissions to Defendant Wright still constitutes proof of overt acts within the scope of the Indictment as drafted.

The Government is correct that it is permitted to prove overt acts not specifically listed in the Indictment, McKee, 506 F.3d at 230 n.6, although it may not prove overt acts that alter the factual basis or theory of the offense

-16-

articulated in said document, <u>id.</u> at 231-32. Here, proffering potential real estate commissions as things of value does not alter the Government's overarching theory of a quid-pro-quo exchange between Defendants to obtain Defendant Wright's assistance in various real-estate ventures. Therefore, such an argument would not constitute a constructive amendment.

Alternatively, Defendants claim that arguing potential real estate commissions as things of value would constitute an improper variance from the Indictment, and that, as a result, they would suffer undue prejudice at retrial. This argument is also unavailing. There is no fatal variance or prejudice where the evidence is disclosed to the defense before trial. <u>United States v. Milstein</u>, 481 F.3d 132, 135 (2d Cir. 2007); <u>Daraio</u>, 445 F.3d 253, 263 (3d Cir. 2006). Defendants do not dispute that the Government provided them with sufficient discovery regarding the potential real estate commissions. Also, Defendants would not face an unfair surprise at trial, given that they themselves raised the issue in their pretrial motion. The Court determines, as at the last trial, that there would be no improper variance of the Indictment. Therefore, the Court will permit the Government to argue that potential real estate commissions were things of value that Defendants Defendants Chawla and Teitelman offered Defendant Wright in exchange for official acts.

B.    Double Jeopardy and Collateral Estoppel

Defendants contend that the Double Jeopardy Clause, particularly collateral estoppel, prohibits the Government from relitigating nine issues that were necessarily decided by the jury in the first trial:

(1)    Assistance with the mechanical parking ordinance;

(2)    Assistance with the River City Project and the related height-restriction ordinance;

(3)    Assistance with Defendant Chawla's attempt to purchase Philadelphia Parking Authority ("PPA") property;

(4)    Assistance with the Sant Properties tax delinquency;

(5)    The free apartment and parking space;[7]

(6)    Free legal work in connection with Defendant Wright's divorce and foreclosure;

(7)    Free legal work in connection with Defendant Wright's eviction proceedings;[8]

_____

[7]    The jury convicted all Defendants on Counts Ten and Twelve of the Indictment, which relate to this issue. Therefore, this issue is not eligible for preclusion and is not included in the discussion below. The Defendants seem to agree, as they did not include it in their proposed order. See Defs.' Joint Mot. to Limit the Scope of Retrial 3.

[8]    The jury also convicted all Defendants on Count Ten of

(8)   The potential real estate commissions discussed
      supra Part II.A.3;[9]  and

(9)   The $1000 check Hardeep Chawla gave to Defendant
      Wright at a Christmas party.

In the Indictment, the Government listed the underlying acts relating to the substantive honest-services-fraud counts as overt acts of the conspiracy charged in Count One. Defendants assert that the Court should preclude the Government from arguing at trial that the above-mentioned issues are overt acts of the conspiracy. Defendants reasons are: (1) their only defense as to the substantive honest-services-fraud counts at the first trial was to argue that they lacked the specific intent to give or receive a thing of value in exchange for official acts; and (2) the jury at the first trial necessarily decided that Defendants lacked this criminal intent

---

the Indictment, which relates to this issue. Thus, the Court will not preclude it at retrial.

[9]      This issue was briefly mentioned in the double-jeopardy portion of Defendant's Memorandum, but it was not developed in the argument section nor was it included in the proposed order. In any event, because the trial record is unclear as to which count this issue applies (indeed, Defendant Wright's counsel admitted as much in closing argument when she said "that's a little obscure as to how [the potential for commissions] fits in," Closing Args., Trial Tr. 52:22-24, Feb. 13, 2009), the jury did not definitively decide its criminality. Thus, the Court will permit the Government to argue it at retrial.

in connection with the specific conduct that each count of acquittal put at issue. Thus, Defendants argue, the Government may not relitigate the criminality of that conduct at trial.

The Government argues that Defendants fail to meet their heavy burden to show that the jury necessarily decided the issue of specific intent as it relates to these issues. The Government further argues that Defendants' explanation for the jury's acquittal is speculative at best because there were other reasons as to why the jury may have acquitted Defendants on the relevant substantive honest-services-fraud counts.[10]

For the reasons articulated below, the Government is precluded from addressing the $1000 dollar check that Hardeep Chawla gave to Defendant Wright. But the Government may argue, in support of the conspiracy charge, that Defendants had criminal intent when they engaged in business transactions relating to the remaining issues, and that those issues served as overt acts of the conspiracy to commit honest-services

---

[10] The Government also argues that, assuming the above-mentioned issues were necessarily decided by a jury, evidence relating to the issues could alternatively be admitted as background evidence or as Rule 404(b) character evidence. However, at oral argument, the parties agreed to address in future motions in limine whether such evidence should be admitted at retrial as background or Rule 404(b) character evidence. Therefore, the Court will not address those arguments here.

fraud.[11]

1.  Legal Standard

    "The Double Jeopardy Clause . . . embodies principles
of collateral estoppel that can bar the relitigation of an issue
actually decided in a defendant's favor by a valid final
judgment." United States v. Merlino, 310 F.3d 137, 141 (3d Cir.
2002). For issue preclusion to take effect in a subsequent
trial, the issue must have been "necessarily decided" by the
prior jury. Yeager v. United States, 557 U.S. 110, 119 (2009).
Usually, a special verdict clarifies which issues the jury
necessarily decided. But in cases involving general verdicts,
such as this one, courts must review the entire record,
including "the pleadings, evidence, charge, and other relevant
matter, and conclude whether a rational jury could have grounded
its verdict upon an issue other than that which the defendant
seeks to foreclose from consideration." Id. at 120 (quoting Ashe
v. Swenson, 397 U.S. 436, 579 (1970)).

    "In a criminal case, a defendant seeking to invoke

---

[11]     In the following sections, the Court discusses the
admissibility of the remaining six issues that Defendants
contend the Double Jeopardy Clause estops the Government from
relitigating. For the sake of clarity, the admissible issues
will hereinafter be referred to as the "non-check issues," and
the inadmissible $1000 check Hardeep Chawla gave to Defendant
Wright will hereinafter be referred to as the "$1000 check."

-21-

collateral estoppel bears the burden of demonstrating that the issue he seeks to foreclose was actually decided in the first proceeding." United States v. Rigas, 605 F.3d 194, 217 (3d Cir. 2010). A Defendant often fails to meet his or her burden because "it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case." Id. at 218 (quoting United States v. McGowan, 58 F.3d 8, 12 (2d Cir. 1995)).

However, this rule "is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." Ashe, 397 U.S. at 444. The Third Circuit has interpreted Ashe to require that, in proferring alternative justifications for the jury's verdict other than the issue in question, the Government cannot "speculat[e] that the verdict could have been based upon a finding that the government failed to prove elements that were never contested by the defense." Rigas, 605 F.3d at 218.

### 2.  Rearguing Defendants' Criminal Intent

The Government seeks to reargue, as part of its effort to prove the existence of a conspiracy, that the Defendants had criminal intent when they engaged in the business transactions surrounding the substantive honest-services-fraud counts.

Defendants insist that their sole defense–they lacked the specific intent to engage in a scheme to defraud—prevents the Government from doing so, and that the focus on intent broadens the "unit of preclusion" from the particular mailings to the business transactions surrounding each count.

As Defendants acknowledge, honest-services fraud requires multiple findings, making their heavy burden to show they are entitled to collateral estoppel that much more cumbersome. The Court at the first trial explained to the jury what the Government must prove beyond a reasonable doubt:

> First: That the charged defendants knowingly and willfully devised a scheme to defraud the citizens of Philadelphia of their intangible right to Christopher G. Wright's honest services . . . by obtaining money or property by materially false or fraudulent pretenses, representations or promises;
>
> Second: That the charged defendants acted with the intent to defraud; and
>
> Third: That in advancing, furthering, or carrying out the scheme to defraud, the charged defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

Jury Instructions 47-48. Each honest-services-fraud count is predicated on a particular email or mailing. And Defendants specifically addressed each of those documents at the first trial, disputing that those documents were produced in

furtherance of the scheme to defraud. Thus, it is highly unlikely that the jury necessarily decided the issue of criminal intent as to the substantive honest-services-fraud counts.

Defendants' argument neatly tracks <u>United States v. Coughlin</u>, 610 F.3d 89 (D.C. Cir. 2010), a case in which the defendant was indicted on five counts of mail fraud, one count of making a false claim, and one count of theft of public money, all stemming from his scheme to defraud the September 11th Victim Compensation Fund by filing exaggerated injury claims. The jury acquitted on three of the five mail-fraud counts and hung on the remainder. <u>Id.</u> at 95.

In <u>Coughlin</u>, the Government argued that double jeopardy should not preclude it from rearguing the existence of the scheme to defraud, because the jury could have acquitted based on the noncriminal nature of the particular injury claims. <u>Id.</u> The <u>Coughlin</u> court rejected this argument, partly because the defendant never contested whether the particular mailings were in furtherance of the scheme. <u>Id.</u> at 99. Therefore, the <u>Coughlin</u> court decided, the jury must have determined that there was no scheme to defraud. Defendants argue that, like in <u>Coughlin</u>, the only issue contested in this case was the specific intent of the Defendants.

But the <u>Coughlin</u> court also determined that the nature

of the mailings themselves was procedural—the mailings were
merely administrative forms—and thus there was nothing in the
content of the mailings worth arguing to the jury. Id. at 98-99.
That fact supported the determination that the in-furtherance
prong was not at issue. Because of the routine nature of each
mailing, the jury would "not have doubted that the letter
furthered that scheme," if a scheme truly existed. Id. at 99.
Thus, the Coughlin jury must have necessarily determined there
was no fraudulent scheme when it acquitted the defendant on
those counts.

Coughlin is inapposite to this case. Here, contrary to
Defendants' assertion, the "in-furtherance" prong of substantive
honest-services fraud was in play. The jury instructions
required the jury to consider the in-furtherance prong: "It is
sufficient if the government proves beyond a reasonable doubt
that one or more of the alleged material misrepresentations were
made in furtherance of the alleged scheme to defraud." Jury
Instructions 49-50. The jury instructions also required the jury
to consider the specific email or letter transaction. See Jury
Instructions 46-48. Although Coughlin's jury instructions
included a similar provision, 610 F.3d at 98-99, here, counsel
for Defendant Wright insisted that "with respect to each
substantive mail wire fraud, [the jury] ha[s] to find that that

particular mailing or wiring was in furtherance of the scheme,"
Trial Tr. 3:20-23, Feb. 18, 2009. This comment belies
Defendants' claim that they only raised the intent issue as to
honest-services fraud.

Also unlike in Coughlin, the predicate emails and
mailings here were not procedural, and the content of each
mailing was hotly contested at trial. A review of the record
shows that Defendants challenged the criminal nature of each
predicate email or letter relating to each acquitted substantive
count in addition to questioning Defendants' specific intent.
This course of action is particularly evident in opening and
closing arguments.

First, as to assistance with the mechanical parking
ordinance, Defendants attacked the factual circumstances
surrounding the email transaction, claiming that Defendant
Wright would have helped draft legislation beneficial to
Defendant Chawla notwithstanding whether Defendant Chawla
actually requested assistance. See Opening Args., Trial Tr.
74:24-75:15, Jan. 29, 2009; Closing Args., Trial Tr. 56-57,
120:12-21:1, Feb. 13, 2009. But Defendant Chawla's counsel also
argued that the emails Defendant Chawla sent constituted a
lawful means of petitioning government. See Closing Args., Trial
Tr. 118:17-21, Feb. 13, 2009.

Second, as to assistance with the River City development project and the related height restriction ordinance, the jury did not necessarily decide all relevant facts in Defendants' favor, because it convicted Defendant Chawla of Count Three, substantive honest-services fraud relating to the River City Project. Also, in closing argument, Defendant Chawla's counsel argued that "[t]he River City Project is a little complicated because it's so enormous . . . ." Id. at 121:9-10. This argument cast doubt on Defendants' claim that the jury necessarily decided that no criminal intent existed regarding all business transactions surrounding the River City Project. Similarly, Defendant Wright's counsel challenged the context of the email Defendant Wright sent, which scheduled a meeting relating to the height restriction, and emphasized that it was public information. Id. at 60:23-62:15.

Third, as to assistance with Defendant Chawla's attempt to purchase PPA property, Defendant Wright's counsel argued that, because multiple bidders were involved, the bid information was public, and Defendants lost the bid, there was no official act benefiting Defendant Chawla. Id. at 57:1-13, Feb. 13, 2009. But counsel also argued that the specific email Defendant Wright wrote relating to the PPA property was innocuous in that he had a legitimate reason to keep his name

out of public records. Id. at 58:8-59:1. In fact, Hardeep Chawla's counsel explicitly argued that the predicate email was "one single email, totally innocuous and appropriate on its face." Id. at 90:14-15.

Fourth, as to assistance with the Sant Properties tax delinquency, this issue relates to the $1000 check that Hardeep Chawla gave to Defendant Wright, supposedly in exchange for assistance in lowering Defendant Chawla's property tax obligation.[12] As discussed infra Part II.B.4, issues surrounding the $1000 check are precluded. But because the tax delinquency is part of the factual scenario surrounding the check, it is unclear whether the jury necessarily decided that the Chawlas intended to rely on Defendant Wright to help abate the liability. Defendants argued both that the check itself was merely a gift, id. at 78:22-25, and that there was no intention for Defendant Wright to intervene on Defendant Chawla's behalf, id. at 96:16-97:16.

Fifth, as for the free legal work in connection with Defendant Wright's divorce and foreclosure, Defendant

---

[12]     Count Nine of the Indictment addresses the Sant Properties tax delinquency. The predicate mailing was an email circulated among Defendants discussing Defendant Wright's assistance with the tax bill. Indictment 27. But the $1000 check played a substantive role in Defendants' negotiation of the matter.

Teitelman's counsel argued that Defendant Teitelman only provided services to Defendant Wright because they were friends and not for a criminal purpose. E.g., id. at 69-70. But counsel also argued that, because the legal materials relating to Counts Eight and Eleven included his name and were public documents, there was no "assistance rendered . . . to help the public official cover up the nature of the gift." Id. at 104:6-105:6. He then moved to his next point: "secondarily, what does that say about [Defendant Teitelman]'s intent?" Id. at 105:16-17 (emphasis added). Counsel's statement implies that intent was not the only element at issue as to these counts.

Based on the above statements, it was not irrational for the jury, in reviewing the contents of the predicate mailings, to consider the in-furtherance element in addition to the scienter element of honest-services fraud.

Instead, this case is akin to United States v. McGregor, 832 F. Supp. 2d 1332 (M.D. Ala. 2011). In McGregor, the jury acquitted multiple defendants of several bribery-theory honest-services counts and hung on the remaining honest-services counts. Id. at 1335. Indeed, unlike Coughlin and similar to this case, McGregor "involved a multi-defendant scheme with [several] honest-services mail-fraud counts and [several] honest-services

wire-fraud counts." Id. at 1338. In McGregor, The Government
intended to retry the defendants on the hung counts, and the
defendants raised a double-jeopardy challenge, arguing that the
jury necessarily decided that there was no overarching honest-
services bribery scheme when acquitting the defendants on the
other honest-services counts. Id. at 1337. The McGregor
defendants cited Coughlin for this proposition. The court
rejected the defendants' argument, because the individual
mailings and phone communications were not merely procedural.
The wide-ranging and complicated nature of the scheme made it
"quite possible that the jury found that a particular call or
mailing was not in furtherance of the alleged scheme or
reasonably foreseeable to a particular defendant." Id. at 1339.

        The same logic applies here. Each of the predicate
mailings in this case was clearly substantive and, as discussed
above, the record shows that Defendants waged a war on at least
two fronts as to each count, attacking the specific-intent prong
and the in-furtherance prong of honest-services fraud.

        Defendants now argue that their reference to the
predicate emails and letters went to intent, and that Defendants
never disputed that the emails and mailings were "in furtherance
of" the bribery scheme. This claim is without merit. Even
assuming it is true, the key inquiry is whether the jury

-30-

believed it to be the case. The jury could have reasonably interpreted Defendants' attack on the content of the mailings as an attack on the in-furtherance prong, and Defendants' post hoc characterization of the record cannot change that. Defendants merely speculate as to the jury's thought process.

Because it is unclear whether the jury definitively determined that Defendants lacked the specific intent to take part in a bribery-based honest-services scheme, Defendants have not met their heavy burden to establish what the jury necessarily decided. The Court will therefore not preclude the Government from rearguing the Defendants' criminal intent regarding the non-check issues as part of the conspiracy to commit honest-services fraud.

### 3. Rearguing the Issues as Overt Acts of Conspiracy

Notwithstanding whether the jury at the first trial actually decided that Defendants lacked the criminal intent as to the non-check issues, the non-check issues may serve as overt acts of the conspiracy, because the jury was not required to determine the criminality of those acts when it convicted Defendants on the conspiracy count.

The elements of conspiracy that the Government must prove beyond a reasonable doubt are as follows: (1) an agreement

-31-

to commit an offense proscribed by federal law; (2) an intent to join the agreement to achieve that objective; and (3) at least one of the conspirators committing an overt act in furtherance of that goal. <u>Wright,</u> 665 F.3d at 568; <u>United States v. Reyeros</u>, 537 F.3d 270, 277 (3d Cir. 2008); <u>United States v. Pressler</u>, 256 F.3d 144, 147 (3d Cir. 2001). The overt act itself need not be criminal. <u>United States v. Mountour</u>, 944 F.2d 1019, 1026 (2d Cir. 1991); <u>United States v. Palmeri</u>, 630 F.2d 192, 203-04 (3d Cir. 1980).

By comparison and as mentioned <u>supra</u> Part II.B.2, the elements of honest-services mail and wire fraud are as follows: "(1) a scheme to defraud (2) use of the mails to further that scheme; and (3) fraudulent intent." <u>United States v. Jimenez</u>, 513 F.3d 62, 81 (3d Cir. 2008) (citing <u>United States v. Pharis</u>, 298 F.3d 228, 233-34 (3d Cir. 2002)). In honest-services fraud cases, the term "scheme or artifice to defraud" is defined as "a scheme or artifice to deprive another of the tangible right to honest services." 18 U.S.C. § 1346 (2012).

Also, as mentioned above, in acquitting defendants of the relevant substantive honest-services-fraud counts, the jury relied on the jury instructions, which tracked the language of the elements of mail and wire fraud, honest-services fraud, and the underlying bribery theory. <u>See</u> Jury Instructions 46-57, 72-

80. However, in determining whether any of the relevant

transactions also counted as overt acts in furtherance of the

conspiracy, the jury relied on these instructions:

> The Indictment alleges certain overt acts. <u>The government
> does not have to prove that all of these acts were committed or
> that any of these acts were themselves illegal</u>. Also, the
> government does not have to prove that a defendant personally
> committed any of the overt acts. The government must prove
> beyond a reasonable doubt that at least one member of the
> conspiracy committed at least one of the overt acts alleged in
> the indictment and committed it during the time that the
> conspiracy existed, for the purpose of furthering or helping to
> achieve the objective of the conspiracy. You must unanimously
> agree on the overt act that was committed.

Jury Instructions 40-41 (emphasis added). Although the jury had

to determine the illegality of the transactions as those they

related to the substantive honest-services-fraud counts, they

were not so bound as to the conspiracy count. True enough, the

jury must have decided whether at least one overt act was

committed in furtherance of the conspiracy. But it is difficult

if not impossible to determine which overt acts the jury

depended on in coming to its decision to convict Defendants on

the conspiracy count.

Defendants argue that, per <u>Dowling v. United States</u>,

493 U.S. 342 (1990), acquitted conduct should not be used as

proof of an overt act at a subsequent trial. But Defendants cite

no language in support of their argument. On the contrary, the

<u>Dowling</u> Court only dealt with Rule 404(b) evidence of acquitted

conduct, ultimately permitting the use of such evidence in a subsequent trial on a collateral matter. The <u>Dowling</u> Court did not address whether acquitted conduct may be used as evidence of overt acts in furtherance of a conspiracy. In fact, the Court implied that such use would be permitted in holding that "the prior acquittal did not determine the ultimate issue in the present case." <u>Id.</u> 348. Here, too, the jury's acquittal on most of the substantive honest-services fraud did not determine the ultimate issue as to whether an overt act had been committed in furtherance of the conspiracy.[13] Therefore, collateral estoppel does not bar the Government from realleging the non-check issues as overt acts of the conspiracy to commit honest-services mail and wire fraud.

---

[13]    Furthermore, Defendants' argument contravenes the holdings of other circuits that have considered the acquitted-conduct/overt-act dichotomy. Circuit courts are in agreement— evidence of acquitted conduct may be admitted at retrial as evidence of overt acts. <u>See, e.g.</u>, <u>United States v. Brackett</u>, 113 F.3d 1396, 1400 (5th Cir. 1997) ("A general verdict of acquittal, exculpating the defendant of liability for a substantive offense, does not estop the government from introducing the same evidence in a subsequent prosecution for conspiracy to commit the same offense.") (citing <u>United States v. Garza</u>, 754 F.2d 1202, 1209 (5th Cir. 1985)); <u>United States v. Lukens</u>, 114 F.3d 1220, 1222 (D.C. Cir. 1997) ("An act need not be independently illegal in order to qualify as an overt act for the purposes of a conspiracy charge.") (citations omitted); <u>United States v. Irvin</u>, 787 F.2d 1506, 1516 (11th Cir. 1986) ("[T]he doctrine of collateral estoppel did not bar the United States from introducing evidence of [acquitted conduct] as overt acts in furtherance of the . . . conspiracy charged in the

4. <u>Hardeep Chawla's $1000 Check</u>

Defendants also want to preclude the Government from relitigating the issue of the $1000 check. Hardeep Chawla gave this check to Defendant Wright at a Christmas party in 2005. The Indictment charges this act as a "Christmas bribe" constituting an overt act of the conspiracy to commit honest-services fraud in Count One of the Indictment and as part of a bribery scheme in Counts Thirteen and Fourteen. The $1000 check is also indirectly related to Count Nine as discussed <u>supra</u> Part II.B.2. The Government similarly charged Defendant Chawla, alleging that Defendant Chawla knew his brother gave the check to Defendant Wright and, indeed, authorized it. The jury acquitted Hardeep Chawla of the conspiracy count and all Defendants of the bribery counts.

The Court must preclude relitigation of the $1000 check. Although the jury convicted Defendants Chawla and Wright with conspiracy, it would not have been rational to base the convictions on the overt act of exchanging the $1000 check. This is because the jury acquitted Hardeep Chawla—the alleged payor and arguably most culpable defendant regarding this issue—of all criminal conduct related to the document. Therefore, the Court will grant Defendants' motion on this issue.

---

indictment.").

**III. CONCLUSION**

        For the foregoing reasons, the Court will grant Defendants' Joint Motion to Limit the Scope of Retrial in part and deny it in part.